UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE MORALES,<br>　　　Plaintiff,<br><br>-against-<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>　　　Defendant. | MEMORANDUM AND ORDER<br>Case No. 24-CV-4755 (FB) |

*Appearances:*
*For the Plaintiff:*　　　　　　　　　　　　　*For the Defendants*:
EDDY PIERRE PIERRE　　　　　　　　　CHRISTOPHER HURD
Pierre Pierre Law, P.C.　　　　　　　　　　NICKEITTA ZIMMERMAN
15 Park Pl.　　　　　　　　　　　　　　　SANTANA JOHANNY
2nd Fl.　　　　　　　　　　　　　　　　　Social Security Administration
Ste. 4　　　　　　　　　　　　　　　　　　6401 Security Blvd.
Bronxville, NY 10708　　　　　　　　　　Baltimore, MD 21235

**BLOCK, Senior District Judge:**

　　　　Plaintiff Stephanie Morales ("Morales" or "Plaintiff") seeks review of the Commissioner of the Social Security Administration's ("the Commissioner" or "Defendant") denial of her application for Social Security Disability Insurance benefits under Title II of the Social Security Act. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

　　　　Morales applied for Social Security Disability Insurance benefits on July 24, 2020, alleging disability as of January 1, 2020. Tr. 392.[1] In her application for benefits she alleged

---

[1] The Commissioner filed the administrative transcript of the proceedings before the Social Security Administration at ECF No. 6. All references to ECF No. 6 are denoted as "Tr. ___."

disability due to bipolar disorder, anxiety, post-traumatic stress disorder ("PTSD"), and paranoia. *Id.* at 478. She also suffers from bilateral hearing loss. *Id.* at 40.

An initial review denied her claim, and the ALJ found Morales not disabled in a decision dated September 19, 2023. *Id.* at 28. She requested review of the ALJ's decision, which the Appeals Council denied on May 20, 2023. *Id.* at 1. Thereafter, Morales commenced this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act seeking review of the Commissioner's decision. Compl., ECF No. 1.

# I

District courts reviewing the Commissioner's determinations under 42 U.S.C. § 405(g) must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). They may not conduct a *de novo* review or substitute their judgment for that of the ALJ, *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), reversing the ALJ "only if the factual findings are not supported by substantial evidence or if the decision is based on legal error," *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).[2]

The Commissioner employs a five-step inquiry to evaluate Social Security disability claims. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At steps one and two, the ALJ

---

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

2

found that Morales had not engaged in substantial gainful activity since the alleged onset date and has the following severe impairments: bilateral hearing loss, major depressive disorder, PTSD, and opioid use disorder in remission. *Id.* at 19. The ALJ also found the following non-severe impairments: right arm pain, hepatitis C, and obesity. *Id* at 19 –20.

At step three, the ALJ found that these impairments did not meet or equal the severity of the specified impairments in the Listing of Impairments, specifically Listings §§ 2.10 (hearing loss not treated with a cochlear implant) or 12.04 and 12.15 (mental impairment). *Id*. at 20. In determining that Morales's mental impairments did not rise to the severity level required by the Listings, the ALJ considered the "paragraph B" criteria and determined that she had neither an extreme limitation in one area of functioning, nor a marked limitation in two areas.[3] *Id.* at 20–21.

At step four, the ALJ found that Morales has the residual functional capacity ("RFC") "to perform a reduced range of light work." *Id.* at 22. Morales's RFC included the following limitations: "She can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday, she can sit for six hours and stand/walk for six hours. She can occasionally, kneel, crouch, stoop, or bend. She can never crawl. She is limited to jobs that require very little to no oral communication. She is limited to simple tasks jobs involving, at most, occasional contact with supervisors and coworkers. She is limited to jobs that have no contact with the public and do not have a lot of oral communication, such as a telemarketer or receptionist." *Id.*

---

[3] The four "paragraph b" categories are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) adapting or managing oneself. 20 CFR Part 404 App. 1 of Subpart P at 105.

The ALJ then found that Morales had no past relevant work experience. *Id.* at 27. However, based on the testimony of a vocational expert and testifying medical experts, the ALJ determined that Morales would be capable of performing jobs that exist in a significant number in the national economy, namely Marker, Silver Wrapper, and "Photocopy Machine Operator." *Id.* at 28. Accordingly, the ALJ concluded that Morales was not disabled. *Id*. at 27. Plaintiff argues that the ALJ erred by (1) failing to properly evaluate her RFC and (2) by failing to properly evaluate her severe disabling symptoms. Pl.'s Mem. at 1, ECF No. 11. For the reasons that follow the ALJ's determinations were based on substantial evidence and Morales's arguments to the contrary fail.

II

Plaintiff first argues that "the ALJ failed to make a function-by-function assessment of Ms. Morales's limitations because he did not identify the evidence supporting his determination that Ms. Morales could perform work consistent with the RFC he assessed." Pl.'s Mem. at 13. However, because the ALJ's RFC is attentive to Morales's functional limitations and is based on substantial evidence, this argument fails.

In determining the appropriate RFC for Morales' hearing capacity, the ALJ relied on the only opinion he found reliable in the record: impartial medical expert Dr. Panosian, who testified at the September 2023 hearing. Tr. 24. While the record contains five other medical opinions related to Morales' hearing, the ALJ found them unpersuasive because "they were all submitted prior to the May 2023 audiological testing that Dr. Panosian relied upon." Tr. 24. The ALJ noted that the previous audiological tests (on which the other experts relied) were "of poor reliability" and therefore the earlier opinions were similarly unreliable. *Id.* Based on Dr. Panosian's opinion, Morales's self-reported daily activities, and her conduct and capacity during the four hearings

4

conducted in this matter, the ALJ determined that Morales had the RFC to perform a reduced range of light work restricted to working situations with "very little or no oral communication." Tr. 22–23. If anything, this RFC is more restrictive than necessary to conform with the opinions of Dr. Panosian. Tr. 25.

Dr. Panosian opined that Morales's hearing was sufficient for one-on-one instruction in a normal office setting and that she would benefit from being five or six feet from, and having direct visualization of, the speaker. Tr. 44. He also testified that Plaintiff's "degree of hearing loss is not an impediment to working in a setting without hearing aids or with hearing aids." Tr. 47-48. Reflecting on this opinion, the ALJ restricted Morales to working situations with "very little or no oral communication." Tr. 22.

Despite this extremely restrictive RFC, Plaintiff contends that because the RFC did not contain the specific functional limitations—that is, the exact same words—found in Dr. Panosian's testimony, the RFC is not supported by substantial evidence. This argument misapprehends the law and the purpose of medical evidence in RFC determinations. As the Second Circuit has stated, "[the] ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). The ALJ's RFC directly addressed the Plaintiff's hearing limitation and was directly based upon evidence in the record, including Dr. Panosian's testimony. Therefore, it was supported by substantial evidence and Plaintiff's argument to the contrary fails.

Plaintiff next argues that the ALJ erred in discounting the opinion of her treating psychiatrist, Dr. Shuster, in favor of the opinions of testifying impartial medical expert Dr. Koocher and consultative examiners Drs. Miller and Nikkah. Tr. 26. The ALJ, however, "was not

required to give special deference to the opinion of [her] treating physician." *Rushford v. Kijakazi*, No. 23-317, 2023 U.S. App. LEXIS 34401, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023). The treating physician rule, which gave controlling weight to a treating physician's opinion, was abrogated by regulation in 2017. *Id.*; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). As such, the treating physician rule does not apply to applications filed after March 27, 2017. *See Rushford*, 2023 WL 8946622, at *1.

Instead, the ALJ was required to assess the medical opinions based on the factors set forth at 20 C.F.R. § 404.1520c, the most important of which are supportability and consistency. *Id.; see Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5853 ("These final rules help eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of the evidence."). Accordingly, the ALJ was required, among other things, to consider the supportability and consistency of Dr. Shuster's opinions.

The ALJ determined that Dr. Shuster's opinions were neither supported by the evidence (including Dr. Shuster's own treatment notes) nor consistent with the record (including the opinions of other experts), and accordingly, that his opinion was "unpersuasive as it overstates the claimant's limitations." Tr. 26. In his report, Dr. Shuster found that the Plaintiff had marked to extreme mental limitations, but the ALJ concluded that these limitations were not supported by Dr. Shuster's own treatment notes. A review of those treatment notes reveals that although Morales was depressed or anxious at times, "she did not generally demonstrate cognitive deficits, behavior issues, or abnormalities in thought process." Tr. 25 (citing Tr. 624, 627, 631, 635, 639, 644, 651, 664, 668). Notably, Dr. Shuster's treatment notes were also vague and confusing, and it

was within the discretion of the ALJ to afford treatment records of this quality only limited weight when determining the claimant's RFC.[4] As for consistency, the ALJ concluded that Dr. Shuster's limitation assessments were inconsistent with the assessments conducted by three other doctors. Tr. 26. Indeed, Drs. Nikkah, Miller, and Koocher all concluded that Morales's medical records supported findings of only mild to moderate limitations in mental functioning. *Id.*

As factfinder, the ALJ's resolution of conflicting evidence is entitled to deference. *See, e.g., Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding that the ALJ did no err in giving one medical opinion less weight where the record "contained conflicting psychological evaluations of [the Plaintiff's] present condition."). Here, the ALJ reviewed the consistency and supportability of the medical evidence and made appropriate determinations regarding Plaintiff's mental limitations. Therefore, the ALJ's findings are supported by substantial evidence and should not be disturbed.

### III

Finally, Plaintiff contends that the ALJ failed to properly assess Morales's disabling symptoms by discounting her "allegations of severe and persistent symptoms without proper grounds." Pl. Mem. at 18. Specifically, Morales argues the ALJ discounted her testimony about (1) her hearing loss and (2) her ability to perform tasks involving others. However, as described above, it is the ALJ's exclusive duty to resolve inconsistencies in the record and Morales fails to

---

[4] For example, Dr. Shuster's September 25, 2020, notes observe that Morales "could not stop going to the bath room, went to the store, someone bumpted (sic) her and took her purse. Screen broke. Got a week and a half later. She ate Chinese food." Tr. 642.

show that the ALJ's determinations were not based on substantial evidence. *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling.")

Morales testified to significant issues with her hearing and clearly had trouble with her hearing when participating telephonically in the ALJ's hearings. Tr. 78. But contrary to Plaintiff's arguments, the ALJ took these issues seriously and factored them into his RFC and his ultimate finding of non-disability. Indeed, the vocational expert ("VE") testified that verbal communication was not an essential function of *any* of the jobs that the ALJ determined she could perform, and that all three jobs could be performed by a person who is deaf. Tr. 129. Accordingly, the ALJ appears to have taken Morales's hearing difficulties so seriously that he sought out possible jobs that would not require hearing at all, even though evidence showed that she could manage jobs requiring some hearing ability.

In his decision, the ALJ observed that Morales no longer has a hearing aid and that she is not continuing to seek treatment for her hearing trouble. Tr. 24. The ALJ failed, however, to mention that the record indicates that Morales's family member threw her hearing aid away ("out of spite") and that she could not afford to purchase a new one. Tr. 23, 633. While it is certainly true that "a claimant's credibility regarding her impairments should not be discounted for failure to obtain treatment she could not afford," *Bernadel v. Comm'r of Soc. Sec.,* No. 14-CV-517 0 (PKC), 2015 WL 5719725, at *14 (E.D.N.Y. Sept. 29, 2015), nothing in the ALJ's opinion indicates that this information was relied upon for the purpose of "discounting" the Plaintiff's credibility. To the contrary, the ALJ noted that these facts "mildly [indicate] that the claimant was able to function adequately despite her problem with hearing." Tr. 24. In other words, they indicate that even without the technology which would make her life (and her ability to work)

8

easier, she managed to get by. As with the entire record, it is the province of the ALJ to serve as factfinder and weigh the evidence. The Court will not disrupt such determinations unless they "are not supported by substantial evidence or if the decision is based on legal error." *Burgess*, 537 F.3d at 127.

Morales's argument as to her ability to perform tasks involving others follows the same structure and has the same failings. The ALJ's RFC limited Morales to jobs involving "at most, occasional contact with supervisors and coworkers . . . no contact with the public and [jobs that] do not have a lot of oral communication," Tr. 22, concluding that these restrictions would "adequately [address] any cognitive, stress-related, or social functioning limitations stemming from the claimant's impairments." Tr. 27. In support of this conclusion, the ALJ noted that Morales received conservative mental health treatment, had no mental health hospitalizations, and her function reports (as well as those of her friend) indicated that she could perform simple tasks involving some contact with others and could travel outside of her home occasionally. Tr. 23 (citing Tr. 494–501, 735–739, 876–884). As with the RFC's limitations regarding her auditory issues, these restrictions seem, if anything, more restrictive than the record would require.

Morales argues that while she *can* do these things, the ALJ's opinion fails to consider *how* she does them; namely that she has difficulty sitting still for long periods of time, has trouble concentrating, and she often needs help remembering to do things. Tr. 85–87. However, after considering her hearing testimony, treatment records, and the expert opinions, the ALJ concluded that Morales could travel outside her home, take public transportation, shop in stores, and do other occasional tasks involving interactions with others. Tr. 26. The ALJ then took on the task of weighing the record's conflicting evidence in order to determine an appropriate RFC for

9

Morales. Because Morales fails to show how the ALJ erred in performing this duty, her claim fails.

An ALJ's findings are entitled to deference, in large part "because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying." *Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013). Such deference is even more appropriate where the ALJ held four hearings—with four opportunities to hear from the plaintiff—as ALJ Grossman did in this case. Because the ALJ considered the Plaintiff's subjective statements and identified record-based reasons for his conclusions, the Court must uphold his opinion. *See Jones v. Berryhill*, 415 F. Supp. 3d 401, 421 (S.D.N.Y. 2019) (affirming ALJ's findings appropriate where "the ALJ cited record evidence in making his decision, and substantial evidence supports the ALJ's findings.")

## Conclusion

The Commissioner's motion is GRANTED and Morales's motion is DENIED.

**SO ORDERED**

                                                                           _/S/ Frederic Block_____
                                                                           FREDERIC BLOCK
                                                                           Senior United States District Judge

Brooklyn, New York
December 4, 2025